# THE STATE v. CLARENCE RIPEY, Appellant.

**Division Two, June 30, 1910.**

1. **RAPE: Demurrer.** Where the prosecutrix testifies positively to the act of ravishment, and she is corroborated in many things by another witness and the attendant circumstances, the question of defendant's guilt becomes one for the jury.

2. **TESTIMONY AT PRELIMINARY TRIAL.** The testimony of the prosecutrix at the preliminary hearing is competent only for the purpose of contradicting her, and questions asked her on cross-examination having no such tendency are properly excluded.

229 Sup—42

3. ——: **Offered in Evidence: Not Questioned Concerning.** Pages
from the transcript of the prosecutrix's testimony at the pre-
liminary trial cannot be offered in evidence unless her attention
was called to them and she denied the testimony.

Appeal from Jackson Criminal Court.—*Hon. Ralph S.
Latshaw,* Judge.

AFFIRMED.

*Philip D. Clear* for appellant.

If fair play on cross-examination of prosecutrix
had been permitted, and the transcript of her evidence
in the preliminary had been admitted, prosecutrix
would herself have plainly shown that these two men,
with herself and cousin, near three a. m., went down
into a draw amongst small trees to partake of the
"forbidden sweet," and hearing a noise on the hill
and seeing a light she screamed "Rape!" believing
her guilt was discovered. Miss Richards says she saw
a light on the hill before it is claimed that prosecutrix
screamed, and that "prosecutrix started to holler when
she heard some trouble on the hill." If defendant be
the party, prosecutrix plainly consented. Mr. Jost and
the two women were all over the ground in question
the day before the trial. He says, and so do prose-
cutrix and Miss Richards, that the three met under
a big electric light by the side of a big house. Here
they say they would have gone with him anywhere,
no threatening words or assault of any kind having
been as yet claimed. They say they were afraid and
yet did not call to the people in the said big house.
They say they were lost, but Miss Richards knew well
where they were. If they had been lost, all the stronger
reason appears why they should have called to the
people in the big house under the electric light, or else
remained there by the street car track till the next
owl car came. Prosecutrix claims she screamed once,
while defendant choked her, and that she did not

scream again till a noise and light appeared on the
hill in front of them, when she jumped, ran, screamed,
and kept on screaming. The only excuse given by
prosecutrix for not screaming during this long con-
versation, through a part of which sexual intercourse
was had, if had at all, is that defendant had choked her
once and she was afraid he would choke her again.
Yet she testifies that no scratches, no bruises, no marks,
no discoloration were on her neck or body, and that
defendant did not have or threaten to use weapons of
any kind. In this conjunction defendant offered Dr.
Freyman, who, after seeing prosecutrix and defendant,
was asked if defendant could have choked prosecutrix
so as to prevent her from screaming without leaving
marks on her neck, which was promptly ruled out.
Exception was saved to the ruling. This was manifest
error. State v. Wertz, 191 Mo. 576; State v. Patrick,
107 Mo. 175. In fact, all the questions ruled out by
the court are proper. State v. Coats, 174 Mo. 424;
Muller v. Hospital Assn., 73 Mo. 242; State v. Ham-
mond, 77 Mo. 159. It is immaterial from what source
counsel draws the substance of impeaching questions.
Schlicker v. Gordon, 19 Mo. App. 484. It is not neces-
sary that former statements or testimony of a witness
be contradictory, but if inconsistent the one with the
other this suffices. Cardes v. Prim, 52 Mo. App. 102;
Leahy v. Railroad, 97 Mo. 165; Brown v. Weldon, 27
Mo. App. 261; Baker v. Shaw, 35 Mo. App. 611; Sulli-
van v. Railroad, 131 Mo. 1; State v. Stein, 79 Mo. 331.
Upon the whole case it is plain that the evidence falls
far short of making out a forcible rape. Half resist-
ance or passive resistance is not sufficient to sustain
rape where no marks or soreness appear on the person
of prosecutrix, even where a girl is sixteen years old
(State v. Burgdorf, 53 Mo. 65), and screams at first.
State v. Wilson, 91 Mo. 410; State v. Perkin, 11 Mo.
App. 82; State v. Goodale, 210 Mo. 283. But why the
verdict? One controlling reason was the unwarranted

language used by Henry Jost in his address to the jury, charging that officer Hinman swore her throat was marked with finger prints. No such testimony appears in the transcript. This is reversible error. State v. Fairlamb, 121 Mo. 150; State v. King, 174 Mo. 659; State v. Shipley, 174 Mo. 516. Also "that the monster tried to tear her to pieces." This is personal abuse and is reversible error. State v. Fisher, 124 Mo. 465; State v. Bobbst, 131 Mo. 338; State v. Prendible, 165 Mo. 359. The court committed grievous error in not stopping such argument whether requested to do so or not. State v. Shipley, 174 Mo. 516; State v. Crowell, 149 Mo. 395.

*Elliott W. Major*, Attorney-General, and *John M. Atkinson*, Assistant Attorney-General, for the State.

Where there is substantial evidence to support the verdict, the appellate court should not undertake to retry the case upon the evidence as disclosed by the record. The court properly submitted this cause to the jury. State v. Wilson, 223 Mo. 173; State v. George, 214 Mo. 271; State v. Cummings, 189 Mo. 626; State v. Swisher, 186 Mo. 1; State v. Dilts, 191 Mo. 665; State v. Mathis, 191 Mo. 587; State v. Dusenberry, 112 Mo. 293; State v. Macks, 140 Mo. 656. The proof clearly shows the crime of rape to have been committed, and that appellant was the guilty one.

FOX, J.—This is an appeal from a judgment rendered by the criminal court of Jackson county, Missouri, convicting defendant of the crime of rape.

The prosecuting attorney of Jackson county filed in the criminal court of said county an information charging the defendant with feloniously, forcibly and unlawfully ravishing Mrs. Lulu Jones, between two and three o'clock on Sunday morning, August 30, 1908, in Kansas City, Missouri. The sufficiency of the information not being challenged there is no necessity for reproducing

it here. The defendant was duly arraigned, as disclosed by the record, and entered his plea of not guilty. Upon the trial of said cause the testimony tended to prove substantially the following state of facts:

Upon the part of the State testimony was introduced showing that Mrs. Jones, the prosecutrix, at the date of the alleged crime, was a married woman whose home was in Chicago. She had an aunt by the name of Mrs. Richards, who then lived at No. 1212 Independence avenue, Kansas City, Missouri.

The record discloses that the prosecutrix, Mrs. Jones, her son, who was only two and a half years old, and her mother, had been to Scammon, Kansas, to attend the funeral of her grandfather, who had been taken there for interment from Chicago. On their return trip home they stopped at Kansas City, Missouri, to visit Mrs. Richards. Mrs. Jones was unacquainted with the streets and directions of Kansas City, Missouri, not having lived there since she was a small girl. She had been visiting her aunt, Mrs. Richards, on this occasion for about a week prior to the time of the alleged commission of the offense. On Saturday night prior to the Sunday morning, the time as designated by the prosecutrix that the offense was committed, Mrs. Jones and her cousin, a Miss Catherine Richards, and two gentlemen, a Mr. Smith and a Mr. Thomas, whom they met by appointment, went to Fairmount Park, and spent the evening seeing the various park amusements, returned on the 11 o'clock car, and went to McClintock's Cafe at Eighth and Walnut streets, for lunch. After the lunch was finished, they, in company with the two men, went to Seventh and Grand to take a car for the Richards home, but reached there just after the two o'clock "owl car" had gone, and rather than wait an hour for another the four started to walk to the Richards home at No. 1212 Independence avenue. Miss Richards and the prosecutrix, Mrs. Jones, dismissed the gentle-

men escorts on reaching the corner of Independence
and Lydia avenue. The men went back south on Lydia
avenue. The reason assigned by the two ladies for
dismissing their gentlemen escorts was that the place
where the Richardses lived was located in an undesira-
ble residence portion of the city, and they did not want
it known that they lived at No. 1212 Independence
avenue. By an examination of the entire record it
seems that the Richards family had only recently moved
to No. 1212 Independence avenue. The two ladies,
Mrs. Jones and Miss Richards, after separating and
leaving their escorts, went across the street, passed
around a large house, and went through an alley on
their way, supposedly, to the Richards home, which
was one block to the west. At this point on their trip
the record discloses that they became confused and
lost their course and traveled a number of blocks out
of their way. While in this confused condition and
practically lost, they discovered that a man was follow-
ing them. They testified that at times this man could
be seen slipping and moving very quietly upon them.
Both of these lady witnesses testified that this fright-
ened them and at times they would run. In this lost
and confused condition they came to where the street
runs into a bluff. Confronted by this condition they
were compelled to turn and then met the defendant
in this cause face to face under a large arc light.
Being confused and frightened they inquired of the
defendant the way to Independence avenue. He an-
swered them by saying that he would show them if
they would follow him. The testimony of these lady
witnesses then discloses that the defendant led them
down into a deep and dark ravine, saying that he was
leading them back to Independence avenue. In cross-
ing the ditch in the ravine, the testimony tends to show
that the defendant and Miss Richards both fell; that
Miss Richards jumped up and ran, climbing the hill
to where she saw a light, and as the prosecutrix, Mrs.

Jones, attempted to jump across the ditch, she was caught around her neck by the defendant and thrown to the ground. She testified that she screamed, but that the defendant threatened her with personal violence and forced her to submit to his desires, and then and there ravished her. Miss Richards testifies that she ran up the hill and tried to give an alarm at the first house, but being unable she went to the second house and finally aroused the people in the house and told of the assault on the prosecutrix in the deep ravine below the house. The police were immediately notified and after some fifteen minutes or more from the time of the assault upon Mrs. Jones, Miss Richards, in company with others, started to the ravine where the prosecutrix was last seen. They found Mrs. Jones coming from the ravine, crying and greatly excited. Her dress and underskirts were badly torn; her hat was on the back of her head, muddy and somewhat crushed. There were indications of mud on her back and the testimony discloses that she complained of her throat for some days afterward. After this occurrence she seemed to be very much excited and disturbed and became so immediately after the occurrence and remained in that condition until after she was taken to the Richards home in an ambulance, sent by the police. Mrs. Jones, the prosecutrix, at the time of the alleged commission of the offense charged against the defendant, was passing through her monthly menstrual period. There was also testimony tending to show that on the front or lower part of the shirt that appellant was wearing on the morning of his arrest was found a large fresh stained blood splotch.

Both the prosecutrix, Mrs. Jones, and Miss Richards positively identified the defendant as the man whom they met under the arc light and who committed the offense as charged in the information.

The testimony on the part of the appellant tends to show that defendant was about twenty years old,

and that he was engaged as a teamster for a Mr. Scrivener, who had a livery barn at the corner of Independence and Lydia avenues. There was also testimony introduced tending to show that the defendant was a truthful and law-abiding citizen.

The defendant testified in his own behalf. He positively denied the commission of the acts to which Mrs. Jones and Miss Richards testified; he, however, admits that he saw the two men leave Mrs. Jones and Miss Richards near the barn sometime after two o'clock on the Sunday morning, the date as testified to that the crime was committed. He also testifies that sometime after he saw the two men leave the two women, and about thirty minutes afterward, he saw an ambulance with a gray team pass the livery barn and this team and ambulance pass back in about twenty minutes thereafter. The defendant further testified that he stayed at the barn until about three o'clock Sunday morning and that he then went down town and slept in a rooming house until the next morning, when he returned to the stable, where he was arrested. There was other testimony offered by the defendant tending to show that he was at the stable at the time it is testified by the State's witnesses that the offense was committed.

This is a sufficient indication of the nature and character of the testimony upon which this cause was submitted to the jury.

At the close of the evidence the court fully instructed the jury, embodying every subject to which the testimony as developed upon the trial was applicable. The cause was then submitted to the jury upon the testimony introduced and the instructions of the court and they returned a verdict finding the defendant guilty of rape, as charged in the information, and assessed his punishment at thirty years in the State penitentiary. A timely motion for new trial was filed and by the court taken up and overruled. Sentence

and judgment were entered of record in accordance
with the verdict and from this judgment the defendant
in due time and proper form prosecuted his appeal
to this court, and the record is now before us for con-
sideration.

## OPINION.

The assignment of errors disclosed by the record
before us may thus be briefly stated:

1. The court erred in not sustaining defendant's
demurrer to the State's case at the close of its evi-
dence, and in not setting aside the verdict of the jury
for want of sufficient evidence to support the same.

2. The court erred in not admitting competent
and material evidence offered by defendant and in
not permitting proper cross-examination of the prose-
cutrix.

3. The court erred in permitting assistant prose-
cutor, Henry Jost, to make the remarks in his ad-
dress to the jury on proper objection then and there
made, and erred in making the remarks to the jury,
appearing of record.

4. The court erred in overruling defendant's mo-
tion for new trial.

We will give the complaints as embraced in the
assignment of errors such attention as their import-
ance merits.

## I.

It is insisted that the court erred in not sus-
taining defendant's demurrer to the State's case at
the close of the evidence. Upon this proposition it is
sufficient to say that we have indicated briefly, yet
substantially, the nature and character of the testi-
mony developed upon the trial of this cause, and in our
opinion the testimony disclosed by the record developed
upon the trial of this case clearly makes it a case
in which the guilt of the defendant was a question for

the jury. The testimony of the prosecuting witness, Mrs. Jones, as well as that of Miss Richards, tends very strongly to the establishment of the commission of the offense by the defendant with which he is charged in the information. The prosecuting witness testifies in detail as to the acts of the defendant in the commission of the crime. This with the corroborating circumstances as testified to by Miss Richards, and the condition of the clothing of the prosecutrix and other wearing apparel, as testified to by other witnesses in the cause, and the fact of the necessity, by reason of the nervous condition of the prosecutrix, of conveying her to the Richards home by an ambulance in charge of the police, manifestly furnishes substantial evidence upon which the State had the right to go to the jury. As to any conflict in the testimony of the witnesses, or discrepancies or inconsistencies in the statements made by any of the witnesses testifying for the State was a matter exclusively for the jury to pass upon.

We take it, in view of the unbroken line of decisions by this court, that where there is substantial evidence to support the verdict the appellate court will not undertake to retry the case upon the mere disclosures of the testimony in the record, that it is unnecessary to cite authorities upon that question.

The action of the court in declining to give the instruction at the close of the State's case in the nature of a demurrer to the evidence was entirely proper.

## II.

Learned counsel for appellant complains at the actions of the court in refusing to admit competent and material testimony offered by the defendant, as well as in not permitting a full and complete cross-examination of the prosecuting witness. We have examined in detail the disclosures of the record as to this complaint, and in our opinion there was no such

error committed by the trial court, applicable to the subject of this complaint, as would authorize and warrant the reversal of this judgment. Counsel for appellant inquired of the prosecuting witness as to certain questions propounded to her in the preliminary examination, and as to whether or not she did not make certain answers to such questions. So far as disclosed by this record the questions and answers in the preliminary examination sought to be injected into this case, did not, as was very properly ruled by the court, tend to contradict the testimony of the witness as given in the present trial. Clearly the answers of the prosecuting witness as given in the preliminary trial were only competent for the purpose of contradicting her, or in other words to show that she had made statements differing from the ones made on the present trial, and if they had no such tendency they were clearly incompetent, and were properly excluded by the court.

Our attention is directed to the question propounded to the prosecuting witness as to whether or not she did not testify in the preliminary trial that the two men, Smith and Thomas, left the two ladies there on the corner. The testimony of the prosecuting witness in the trial of this case was that the two men, Smith and Thomas, left her and Miss Richards at the corner of Independence and Lydia avenue. The question as read from the transcript did not in any manner tend to contradict her statements in this case, but in corner of Independence and Lydia avenues. The question and answer as given in the transcript were as follows: "Q. How far did they go with you out there? A. They left us there on the corner." We are unable to see any reversible error in excluding the question and answer as contained in the transcript for the reason, as given by the court, that it in no way tended to contradict the statements as made at the present trial.

The record further discloses that after the State and appellant had introduced all of the testimony in the cause and rested the case counsel for appellant then sought to offer some parts of what purported to be the transcript of the testimony of the prosecutrix taken at the preliminary hearing. He said to the court: ''I offer these three pages of the transcript in evidence, the top of page twelve of the transcript.'' It is sufficient to say upon this proposition that in the first place it does not appear that the three pages of the transcript of the evidence taken in the preliminary examination, offered in evidence at the stage of the trial as heretofore indicated, were ever called to the attention of the prosecuting witness. Obviously that was a good reason for the court to exclude it; but aside from all that the pages of the transcript of evidence taken in the preliminary examination, as offered by counsel for appellant, are not disclosed in the record now before us. If the prosecuting witness testified differently in the preliminary examination from what she did upon the trial of this cause then clearly it was the duty of counsel to first identify the transcript, call the witness's attention to the statements therein made, and if she denied making them to offer the testimony as embraced in such transcript in evidence and properly preserve the evidence as contained in the transcript in the record of this cause for review by this court. The record before us, as before stated, does not contain the testimony embraced in the transcript as offered by counsel for appellant, therefore it is manifest that this court does not know what such transcript contained, and it is not before this court for review or for any other purpose. Appellate courts do not indulge the presumption that the trial court committed error in the admission or rejection of testimony, but the record must disclose the testimony offered to the end that the appellate court may be in a position to determine the competency or incompetency

of the testimony offered. In the absence from the record of the testimony embraced in the transcript as offered by counsel for the defendant, the presumption will be indulged that the court correctly ruled in excluding such evidence. It is fundamental that the burden rests upon appellant to convict the court of error in the trial and disposition of his case.

We have examined and fully considered the disclosures of the record as to other objections and exceptions to the action of the court in the admission and rejection of testimony and have reached the conclusion that there was no such error as would endanger the rights of the defendant to a fair and impartial trial.

### III.

Learned counsel for appellant earnestly complains at the remarks of the assistant prosecuting attorney in his closing argument to the jury, and insists that such remarks constitute reversible error and that this cause should be reversed upon that ground. It is sufficient to say upon that complaint that we have read in detail and carefully considered the remarks attributed to the prosecuting officer in his closing address to the jury, and while, as we have had occasion to say in some other cases, it would perhaps be in keeping with the better rule to have left unsaid some of the statements complained of, yet in view of the testimony as developed upon the trial and the nature and character of this case, we are unwilling to say that the remarks as made are sufficient to warrant this court in reversing this judgment. Some allowances must be made in a case where the charge is that of ravishing a female, where the testimony at least tends to show that the prosecuting witness was violently assaulted and her wearing apparel torn by the party charged with the commission of the offense, and we have upon

this question reached the conclusion that the remarks complained of are not of that nature and character that so far transcends the bounds of appropriate and legitimate discussion as would warrant the reversal of this judgment.

We have indicated our views upon the leading and controlling questions presented by this cause, which results in the conclusion that there was no reversible error committed by the court in the trial of this case. The defendant was tried in the city where he resided, before a jury selected from that vicinage; the witnesses testifying in the cause were before the court and jury; they had opportunities of determining the credibility of such witnesses, as well as the weight to be attached to their testimony, which are not afforded the appellate court; the finding of the jury was approved by the trial court; the verdict as returned is supported by substantial evidence tending to show the guilt of the defendant; therefore, in harmony with an unbroken line of adjudications in this State we are unwilling to disturb the verdict as returned by the jury. The judgment of the trial court should be affirmed and it is so ordered. All concur.