THE STATE v. F. E. PRESLAR, Appellant.—300 S. W. 687.

Division Two, December 12, 1927.

*James A. Bradley* for appellant.

*North T. Gentry*, Attorney-General, and *A. B. Lovan*, Assistant Attorney-General, for respondent.

HENWOOD, C.—An information ·was filed in the Circuit Court of Dunklin County in which appellant, acting in concert with Jadie P. Preslar and Herbert Samples, was charged with rape. Like informations were filed against Jadie P. Preslar and Herbert Samples, the same concert of action being charged in each case. Upon the application of the defendants, the venue was changed to the Circuit Court of Stoddard County in the three cases. The regular judge of that court was disqualified by defendants' affidavits charging that he was prejudiced against them, and the regular judge of another circuit was called in to try the cases as special judge. The record recites that, by agreement, the three cases were consolidated and tried as one case. The jury found each of the defendants guilty and assessed the punishment of appellant, F. E. Preslar, at imprisonment in the penitentiary for twelve years, that of Jadie P. Preslar at like imprisonment for three years, and that of Herbert Samples at like imprisonment for four years. Each was sentenced accordingly, but, it appearing that Jadie P. Preslar and Herbert Samples were each under the age of eighteen years, the court commuted their respec-

tive sentences to confinement in the Reform School for Boys at Boonville until they reach the age of twenty-one, when, if not otherwise released or discharged, they are to be transferred to the penitentiary and there confined for the remaining part of their original sentences, according to the court's order of substituted punishment. Each of the defendants appealed, but the appeals of Jadie P. Preslar and Herbert Samples have been dismissed upon their respective applications. This leaves the case here for review on the appeal of F. E. Preslar only.

Meedie Pewitt, the prosecutrix, testified that, at the time in question, she was between sixteen and seventeen years of age and lived about two miles northeast of the town of Frisbee, in Dunklin County. On Sunday evening, February 21, 1926, she was visiting in the home of Mrs. Lora Proffer, near the east limits of Frisbee and along the road extending eastward from the town. "About nine-thirty" that evening, the defendant Herbert Samples came to the Proffer home and reported that her mother was sick and wanted her to come home. Rather reluctantly, she started to her home "afoot" with Samples and, after they had gone about three-fourths of a mile along the road, they were overtaken by the defendants F. E. Preslar and Jadie P. Preslar in a Hudson coach automobile. The car stopped, and Samples said they would get in and ride. She objected and Samples forced her into the front seat of the car with F. E. Preslar, who was driving, and got in the back seat with Jadie P. Preslar. After the car started, she jumped out, ran back towards Frisbee and "hollered" several times. The car stopped, and Samples and Jadie P. Preslar ran back after her. Samples held his hand over her mouth, and Jadie P. Preslar struck her. Samples shouted to the driver, F. E. Preslar, to back up the car, and she was again forced into the car, in the back seat. When she complained and told them they "ought to be ashamed" for telling her a lie to get her out, Samples said, "Shut your mouth or I'll shoot you." She replied, "I would rather be dead than to be done this way." After they drove on eastward some distance, near Marlow Chapel, the car was stopped and Samples told her, in vulgar terms, what they intended to do to her. Then, each of the defendants, in turn, had sexual intercourse with her in the back seat of the car. Each of them, while engaged in this act, held one hand over her mouth and with the other hand held both of her hands. In each instance, the act was accomplished by force and against her will, and without her consent. When they drove back within two miles of Frisbee, she got out of the car and started towards her home. In a very threatening, abusive way, Jadie P. Preslar told her they would kill her if she told anyone what had happened. Over her objection, Samples went part of the way with her and forced her to have sexual intercourse with him again. This

he did, by throwing her down and holding her, with one of his hands over her mouth. When he left her, about a quarter of a mile from her home, he said, "You had better tell you have been to church, you know them Preslars is a mean outfit, and I am too." She was bruised about her legs and privates and she complained of being sore for several days. The elastic in her bloomers was broken, her clothing was torn, and there was blood on her bloomers. On the afternoon of the following day, she reported this occurrence to her mother, and then, in company with some of their neighbors, she went to Kennett and related her experience in full to the prosecuting attorney of the county. On cross-examination, she denied that she had previously arranged with Samples to come to the Proffer home for her that night. She also denied that Esther Samples and Melissa James were with her and the defendants in the car. Two physicians testified that they examined her on February 23rd, two days after this occurrence, and that she was bruised about her lower legs and that there was a bruise or abrasion on the inside of her privates. The State's evidence further shows that the defendants were together in Frisbee on the Sunday evening in question, and that they drove east out of Frisbee about nine o'clock, in a Hudson coach. There was no one else with them at that time. They stopped the car and turned off the lights at the edge of town, and Samples got out and started in the direction of the Proffer home. Two witnesses testified that, later on, they heard a girl or woman scream two or three times, along the road about three-fourths of a mile east of Frisbee. They saw a car standing near-by, with the engine running and the lights flashing off and on. One of these witnesses said, "Somebody hollered, 'back up.'" It further appears from the evidence offered by the State that the defendants left Dunklin County and drove into the adjoining State of Arkansas on Tuesday, the second day after this affair, but returned on the evening of the same day, when the Preslars were arrested on this charge. They were caught, with other prisoners, in an attempt to break out of jail at Kennett a few weeks thereafter. Samples evaded the officers for several days by hiding at different places in the surrounding country. On the day of his arrest and later, while confined in jail, he made statements, in which he corroborated the prosecutrix in practically every detail. He said that, on this Sunday evening, he and the Preslars drove to Kennett and got some whiskey and "they made up on the way, to get this girl out;" that he went to the Proffer home and got her, that they forced her into the car, and when she jumped out they caught her and put her in the car again, and that each of them, in turn, had sexual intercourse with her; and he further said, "She was forced, and I am going to tell the truth about it and take my medicine." He also told the officers that the Preslar boys advised him he "had better get out of the

country'' and that they took him to Arkansas and tried to get him to stay but ''he didn't want to stay.''

The defendants took the stand and, as to the crime charged against them, the testimony of each of them was substantially the same. They said they left Frisbee, about nine o'clock, in the Hudson coach and picked up Esther Samples and Melissa James at the Samples Lane, and that some distance east they overtook Herbert Samples and the prosecutrix. They drove several miles and, when they returned to a point near the home of the prosecutrix, she and Samples got out of the car; that there was no trouble or difficulty of any kind on the trip, and that the prosecutrix was not mistreated in any way. Each of them denied having sexual intercourse with her. Jadie P. Preslar said that, when they overtook Samples and the prosecutrix, she ''hollered, 'Stop, this is us; stop''' and Samples said ''Back that car back.'' Samples said that, when he and the prosecutrix got within ''about a half a quarter'' of her home, after the drive, she said, ''You can turn around here and go home if you want to keep mother from knowing I have been out with anyone; I'll tell mother I come home with some girls.'' Samples further said that the statements he made to the officers were not true; that he made those statements because Mr. Billings, the prosecuting attorney, and Mr. Mead, the deputy sheriff, lead him to believe that a mob would get him if he didn't admit everything the prosecutrix had told them. Each of the defendants further testified that their trip to Arkansas was only for the purpose of taking Mr. Will Samples there to attend to a business matter. Mr. Samples, father of the defendant Herbert Samples, also testified to that effect. The testimony of the defendants, as to what happened on the Sunday night drive, was corroborated by the witnesses Esther Samples and Melissa James. The defendant F. E. Preslar (appellant) was thirty years old and married, at the time in question, but his family situation was not disclosed at the trial. He admitted, on cross-examination, that he had been convicted twice in the Circuit Court of Stoddard County. He said he paid a fine for ''possession of booze'' and ''got eight years for selling whiskey.'' It further appears that he and Jadie P. Preslar are cousins.

Mrs. Melvina Carpenter testified, for the defendants, that, ''about eight or nine o'clock'' on the Sunday night, the prosecutrix came to her house for some ''Vicks salve'' and told her ''she heard her mother was sick and she ought to have went home, but she didn't go; that she was going a car-riding with Little Jay and Herb and Esther and Melissa.''

Mrs. Arpie Preslar, the mother of the defendant F. E. Preslar (appellant), testified that the statements of the prosecutrix at the trial differed from the statements made by her at the preliminary

hearing, as to the manner in which the defendants held her hands at the time they had intercourse with her. On cross-examination, she denied that she offered Frank Pewitt, father of the prosecutrix, a note, secured by a deed of trust on land, or a tract of land with a deed of trust against it, if he took Meedie away and wouldn't prosecute the case.

In rebuttal for the State, Frank Pewitt testified that, on March 24, 1926, Mrs. Arpie Preslar came to his house and offered him a $500 note, secured by a second deed of trust on eighty acres of land, or forty acres of land, with $1000 against it, if he would stop this prosecution. Mr. Pewitt's wife (Lizzie) and daughter (Edna) testified to the same effect.

I. It is earnestly contended by counsel for appellant that the trial court erred in permitting the State to prove, by rebuttal witnesses, the offer of Mrs. Arpie Preslar to give Frank Pewitt a note or an interest in certain land if he would stop the prosecution of this case. And counsel further contends that the trial court erred in failing to instruct the jury as to the purpose of this evidence.

The court properly permitted the State to cross-examine Mrs. Preslar on this matter, in order to show her interest in the defense of her son and in the result of his trial. She denied making the offers of settlement in question. The record shows that, when the State placed Frank Pewitt on the stand, in rebuttal, and offered to prove, by him, the offers of settlement referred to, the court stated that the evidence was competent only to show the interest of the witness Mrs. Preslar in the result of the trial and to thereby attack her credibility, and thereupon, Mr. Bradley, of counsel for appellant at the trial, said, "We don't object to it for that." The record further shows that the witnesses Lizzie Pewitt and Edna Pewitt gave exactly the same testimony in rebuttal, as the witness Frank Pewitt. and that no objection at all was made to their testimony. Thus, it is plain that no exception was saved as to the admission of this evidence, and that, therefore, the question of its admissibility is not a proper subject for our consideration.

The failure of the court to instruct the jury as to the purpose of this evidence was a mere non-direction on a collateral matter. Appellant requested no instruction of this character and saved no exception to the court's failure to so instruct the jury.

Restricting Evidence. It is well settled that Section 4025, Revised Statutes 1919, does not require the court to instruct the jury on a matter of this kind. Therefore, the court committed no error in this particular. [State v. Parker, 256 S. W. l. c. 1043, and cases cited.]

II.   Other assignments of error, in appellant's motion for a new trial, relating to the admission and exclusion of evidence and as to given and omitted instructions, are general in character and do not point out, with any particularity, the matters complained of.   Under the present rule, such assignments are not proper subjects for review.   [Laws 1925, p. 198; State v. Standifer, 289 S. W. 856; State v. Murrell, 289 S. W. 859.]

III.   The sufficiency of the information and of the evidence are challenged in the motion for a new trial, but are not seriously urged as grounds of complaint in appellant's brief.

The information follows the language of the statute and sufficiency pleads the offense sought to be charged.   [Sec. 3247, R. S. 1919, Laws 1921, p. 284a; State v. Colley, 289 S. W. 807; State v. Warren, 232 Mo. 185, 134 S. W. 522.]

The evidence produced by the State, as above recited, not only made a case for the jury, but is abundantly sufficient to support the verdict against appellant, as well as his co-defendants.   The prosecutrix told a straightforward story of her horrifying experience, and told it in substantially the same way on each and every occasion she was called upon to do so.   She made prompt complaint to her mother and to the prosecuting officers of Dunklin County.   And she was corroborated, either by direct or circumstantial evidence, in nearly every particular.   [State v. Cooper, 271 S. W. 471; State v. Wade, 268 S. W. 52; State v. Ripey, 229 Mo. 657, 129 S. W. 646.]

IV.   Appellant further asserts in his motion for a new trial that the verdict is excessive, and also, that it resulted from passion and prejudice on the part of the jury.   It must be remembered that the fixing of the punishment for crime is a legislative and not a judicial function and, when as in this case, the punishment assessed is within the limits prescribed by the statute, it cannot be adjudged to be excessive.   [State v. Alexander, 285 S. W. 984.]   There being nothing in the record to indicate that the jury was moved by passion or prejudice, the mere charge of such promptings on their part is without avail.   [State v. Helpley, 279 S. W. 701; State v. Renfro, 279 S. W. 702.]   The statute fixes the maximum punishment for rape at death or imprisonment for life. In view of the extreme penalties prescribed and sometimes imposed on persons found guilty of this crime, appellant should hardly be heard to complain of the punishment assessed in this case.   [Sec. 3247, R. S. 1919, Laws 1921, p. 284a.]   Appellant was thirty years old and a married man at the time of the alleged offense.   His age and experience and better opportunity to appreciate the gravity of

the wrong done, doubtless explains why the jury imposed a much heavier punishment on him than his co-defendants, both of whom were under eighteen years of age. If the story of the prosecutrix is true, appellant and his co-defendants wickedly conspired to take her away from the protection of friendly hands and then subjected her to three brutal assaults. They accomplished their felonious purpose in beastly fashion. She fought nobly against big odds to preserve her honor and good name.· Manifestly, the jury believed her story and they were fully warranted in doing so, under all of the facts and circumstances developed at the trial. Their verdict was a real triumph for justice and a wholesome thing for their community. It will tend to make more secure the purity of young womanhood.

We find no error in the record. The judgment against appellant is, accordingly, affirmed. *Higbee* and *Davis, CC.,* concur.

PER CURIAM:—The foregoing opinion by HENWOOD, C., is adopted as the opinion of the court. All of the judges concur.