THE STATE v. TONY MANGERCINO, *alias* TONY MANGIARACINA, Appellant.—30 S. W. (2d) 763.

Division Two, July 3, 1930.

*Jos. R. Lasson* and *Myer Goldberg* for appellant.

*Stratton Shartel*, Attorney-General, and *Don Purteet*, Assistant Attorney-General, for respondent; *Otto & Potter* of counsel.

COOLEY, C.—This is an appeal by defendant, Tony Manger-cino, alias Tony Mangiaracina, from judgment and sentence of death upon conviction of murder in the first degree. This defendant and John Messino, Carl Nasello and four others were jointly charged by information filed July 3, 1928, in the Circuit Court of Jackson County, Missouri, with the murder of James H. Smith. Severance having been granted them the three named were tried separately and each was convicted of murder in the first degree, sentenced to death and appealed. The three cases were argued together in this court.

The Messino case was tried first, the trial of this case occurring about two weeks later (July 31 to August 7, 1928). The issues, both of law and fact, in this and the Messino cases, are substantially identical except that in this case there was some evidence of an alibi which was lacking in the Messino case, no evidence there having been offered by the defendant. As the facts are stated in that opinion a brief outline here will suffice. See State v. Messino, *ante,* page 743, 30 S. W. (2d) 750, concurrently decided.

The State's evidence tended to show that on June 14, 1928, about seven men, among whom were defendant, Messino and Nasello, robbed the Home Trust Company (referred to in evidence as the bank), a banking institution located at 1117 Walnut Street, Kansas City, Missouri, and killed James H. Smith, a policeman then serving as traffic officer. The robbers secured about $19,000, mostly in cash, but including some Liberty Bond interest coupons. Smith was shot and killed at a point some 150 feet from the bank as the robbers with their plunder were escaping from the institution in a Buick automobile, which had been procured and was in readiness for the purpose. The evidence clearly indicated that the robbery and murder were committed pursuant to a conspiracy which included, not only the actual robbery, but also joint action by the robbers in making their escape with the loot and the taking of life it thought necessary to effectuate the robbery and escape.

Counsel representing defendant also represented Messino. The two cases were tried on the same theory and the briefs in this court are alike, the same points being urged and for like reasons, except for the defense of alibi.

I. Applications for change of venue from Jackson County and from all of the judges of the judicial circuit and for continuance, similar to those in the Messino case, were made and overruled. Evidence *pro* and *con* was heard by the court on the application for change of venue from the county. The same situation existed in respect to the death of the trial judge before passing on the motion for new trial as in the Messino case. These questions were fully considered in that case and were decided adversely to the defendant. For like reasons they are so ruled here.

II. Defendant did not testify, but he called as witnesses his father, mother, a sister, brother-in-law and two others, whose testimony tended to show his presence at the homes of his father and brother-in-law about the time of the robbery and murder. Allowing for but slight inaccuracy in the estimate of time, the testimony of defendant's father, mother and sister could have been true and yet defendant could have been at the bank when the State's evidence shows he was there. One of the other witnesses was impeached by a showing of two convictions, one for sale and one for possession of intoxicating liquor. Four or five unimpeached witnesses, some of whom knew defendant personally, positively identified him as one of the robbers and one of the occupants of the Buick car at the time Smith was killed. One

identified him as the man who shot traffic officer Capshaw at the street intersection next north of the one where Smith had been stationed. Clearly there was abundant evidence to justify the jury's finding that defendant was present at the robbery and murder.

III. Several revolvers, a shotgun with buckshot loaded shells, a machine gun, ammunition for all these weapons, some masks and burned remnants of Liberty Bond coupons identified as those ▬▬▬ stolen from the bank, were introduced in evidence, over defendant's objection that they were not "connected up" by showing that they were weapons, etc., used in the robbery and murder and did not tend to connect defendant with the crime charged.

They were found the day following the robbery and murder at a vacant house in Eastwood Hills, a suburb of Kansas City. All of the articles were found concealed under some boards except the burned interest coupons which were in the basement. One of the revolvers was identified as a revolver which, some months before the robbery, had passed into the possession of Nasello who was identified as one of the robbers and shown to have had a revolver in his hand during the robbery. Some of the robbers were masked. The burned interest coupons were those stolen from the bank. While fleeing from the bank in the car one of the bandits was seen to have a machine gun of the exact description of the one found at the vacant house and they also had a shotgun like the one there found. Smith was struck by buckshot like those in the shells found with the weapons. We think there were sufficient circumstances shown to justify the admission of the exhibits. The weapons used in the robbery and murder were admissible. [State v. Cooper (Mo.), 259 S. W. 434.]

IV. Complaint is made of alleged error in the admission of evidence of "other offenses," as follows: (a) The showing that a revolver, as above mentioned passed into the possession of Nasello ▬▬▬ from one Myers prior to the robbery of the bank. The contention is that a theater of which Myers was manager had been robbed and that this evidence tended by innuendo to show that robbery. The evidence was offered, we presume, to show that Nasello, one of defendant's accomplices, owned one of the revolvers found at the vacant house. The robbery of the theater, if there had been one, was not referred to. The evidence was competent.

(b) A young woman was wounded by a bullet or buckshot from the bandit car, possibly a second or two after Smith had been shot, and at the next intersection—it could hardly have been

a minute later—officer Capshaw was wounded from the same car as it continued its flight, the occupants shooting all the while. These were not separate offenses, as contended by defendant, but parts of a continuous occurrence, so intimately connected with the robbery and murder that an intelligible account of the offense charged could hardly have been given without these incidents. [State v. Parr (Mo.), 246 S. W. 903-905, and cases cited.] Then too, these incidents tended to show the nature, purpose and extent of the conspiracy. The evidence complained of was properly admitted.

V. Defendant charges that the court permitted counsel for the state to "indulge in improper conduct" in the trial, and complains of certain remarks of the prosecuting attorney in his closing argument to the jury. (1) During the trial it appears that while witness Capshaw was on the stand and several of the attorneys were at the judge's desk discussing with him some question which had arisen, Capshaw had the machine gun in his hand and a juror asked him how many times it would shoot, to which Capshaw replied, "About a hundred;" also that during this interval one of the attorneys for the State, observing that Capshaw, who was still suffering from his wound, appeared fatigued, said to him: "I believe we will be through right soon, I hope we don't have to keep you long:" to which Capshaw replied: "Well, I am just weak, you know."

The court, being engaged with counsel, did not hear those conversations. In the hearing of the jury and without asking its withdrawal, defendant had Capshaw repeat from the witness stand the conversation between him and the juror, thus by his own act proving the number of times the gun would shoot. He then asked the court to declare a mistrial which was refused. No request was made for a direction to the jury to disregard the things now complained of. No reason is assigned why they were prejudicial and we can see none. This assignment is overruled.

(2) The remark complained of, made by the prosecuting attorney, was a reference in the closing argument to defendant and his confederates as a bunch of Italian gangsters. Defendant objected for the reason that "it is wholly improper and inflammatory. There is no evidence about this defendant being an Italian gangster or any other nationality." The court overruled the objection, defendant excepting.

The part of the prosecuting attorney's argument in which he used the language complained of was in answer to a bitter and apparently unjustified attack made by defendant's counsel upon the State's witnesses who had identified defendant, said counsel having

804

characterized one of those witnesses as a liar and perjurer and having also, without using those words, argued that the others had committed perjury.

From the wording of defendant's objection and by reference to other portions of the argument, we think defendant's objection was to the use of the word "Italian," rather than the word "gangster," and that it was so understood by the court. There was evidence that defendant was of Italian parentage. While the term "gangster" may be vague in its signification, we think it cannot be said that it was wholly inappropriate to characterize the conduct of those engaged in the robbery and murder, nor that evidence was lacking to justify the inference that defendant and his confederates were, on that occasion at least, gangsters. The court, therefore, cannot be convicted of error in overruling the objection as made. Moreover, while we do not wish to be understood as approving or condoning the use of such terms in referring to a defendant in the argument of a case, we do not regard it, under the circumstances and in view of the evidence, as having been prejudicial. [State v. Nasello, ante, page 442, 30 S. W. (2d) 132, concurrently decided, and cases cited.]

VI. Defendant contends that the court erred in drawing a jury panel of forty-eight instead of forty-seven. That was not done. In qualifying prospective jurors, a Mr. Fox was at first tentatively accepted. Later and before the panel of forty-seven had been completed, Mr. Fox sent word to the court that he had misunderstood a question relative to whether or not he was opposed to the death penalty. He was recalled and questioned further and it developed that he was so opposed. Thereupon he was excused by the court, over defendant's protest that having been "accepted," as defendant contended, he could not be excused. The panel was later completed by the addition of enough more to make forty-seven without Mr. Fox. Defendant introduced a paper containing a list of forty-eight names, being the names of the forty-seven who qualified and Mr. Fox's name also, which defendant's counsel testified was the panel as handed to him without the State's challenges indicated. Upon this showing he claims that there were forty-eight men qualified from whom the twelve jurors were to be selected, thus allowing the State an additional peremptory challenge. He does not contend that he was not himself allowed the statutory number of challenges. The fact that through some one's mistake Fox's name was left on the list from which challenges were to be made in no way misled defendant or his counsel and they do not so claim. Both sides knew that Fox had been excused by the court and was not to be considered as one of the panel. There is no merit in this contention.

Neither is there merit in the further contention that the court erred in permitting counsel for the State to ask prospective jurors on *voir dire* examination if they were acquainted with Messino ▮▮▮ and Nasello. Those two were charged jointly with defendant and the State expected to prove and on the trial did prove them to have participated with defendant in the commission of the offense for which defendant was on trial. The prosecuting attorney doubtless wanted the information sought to guide him in making challenges. The inquiry went no farther than the question whether or not the jurors were acquainted with the two men named.

In State v. Meysenburg, 171 Mo. 1, 71 S. W. 229, it was held that the prosecuting attorney should not have inquired on *voir dire* examination as to the jurors' acquaintance with other persons charged with crime. The court said (l. c. 37) that the inquiry took too broad a scope and (p. 66) that the evident purpose of the inquiry was to do indirectly what could not be done directly, viz., to intimate to the jurors that defendant was "a bird of the same feather" as those referred to and thus in advance prejudice the jury against the defendant. There is nothing to indicate such purpose in this case. Defendant was not prejudiced by the inquiry.

VII. Defendant requested four separate instructions on the subject of alibi which were by the court refused and he alleges error in such refusal. That subject was fully covered in the instructions given. By Instruction No. 10 the jurors were told in substance that if they believed from the evidence that at the time the alleged crime was committed defendant was not present at the scene of the crime, they must acquit; by number 14 they were instructed in substance that it devolved upon the State to prove beyond a reasonable doubt the presence of defendant at the time and place where the offense was committed and that defendant participated therein as charged, and that if upon consideration of all the evidence they had a reasonable doubt of the presence of defendant at the time and place where the offense was committed they should find him not guilty, and further, that defendant was not required to prove the defense of alibi beyond a reasonable doubt, but that it was sufficient to entitle him to acquittal if the defense upon that point raised a reasonable doubt of his presence at the time and place of the commission of the offense charged. Instruction 9 directed the jury that if the whole evidence in the case left their minds in such condition that they were neither morally certain of defendant's innocence or of his guilt, a reasonable doubt existed and they must give defendant the benefit of such doubt and acquit him. Instructions numbered 9, 10 and 14 were not challenged in defendant's motion for new trial. There

is some criticism of number 14 in his brief as requiring him to prove the defense of alibi beyond a reasonable doubt, but it does not so require and could not have been so understood. The defense of alibi was fully submitted by the instructions given, and those requested by defendant, had they been given, would have been in substance and effect repetition. There was, therefore, no error in their refusal.

Certain other instructions which were requested and refused sought to define reasonable doubt and presumption of innocence. Those subjects also were fully covered by the instructions given, which followed forms heretofore often approved by this court. [See State v. Gus Howard (Mo.), 324 Mo. 145, 23 S. W. (2d) 11, and cases cited.] Defendant's requested instructions on those subjects were not free from error, but since those issues were fully and properly submitted we need not further examine the refused instructions relative thereto. They were properly refused.

Complaint is also made of the court's refusal to give a requested instruction on circumstantial evidence. The State's evidence was not wholly circumstantial, hence such instruction was not required to be given. [State v. Lowry, 321 Mo. 870, 12 S. W. (2d) 469; State v. Steinkraus, 244 Mo. 152, 148 S. W. 877; State v. Nasello, supra, ante, p. 442.]

There was no contention in this case that the court did not give instructions submitting the converse of the State's main instructions.

Except as hereinabove mentioned, the instructions, both those submitting the issues and those requested by defendant and refused, were substantially the same as in State v. Messino, supra (q. v.), and the same contentions here urged relative thereto were pressed in that case and were ruled adversely to defendant. See also State v. Nasello, supra. Other points urged for reversal, not hereinabove specifically referred to, were also urged upon like grounds in the Messino case and were there fully considered and therefore need not be further discussed. They are ruled against defendant.

The information, verdict and judgment are in due form and we find the record free from reversible error. Defendant had a fair trial and the verdict is amply sustained by the evidence. The judgment must be and it is affirmed. *Davis* and *Henwood, CC.,* concur.

PER CURIAM:—The foregoing opinion by COOLEY, C., is adopted as the opinion of the court. All of the judges concur.