THE STATE v. ESTHER FRANCIS, Appellant.—52 S. W. (2d) 552.

Division Two, August 29, 1932.

1206

*Stratton Shartel*, Attorney-General, for respondent; *G. C. Weatherby* of counsel.

ELLISON, J.—The defendant, a negro woman nineteen years old, was convicted of manslaughter by a jury in the Circuit Court of the City of St. Louis, and her punishment fixed at imprisonment in the penitentiary for six years. She was allowed to appeal as a poor person. No brief in her behalf has been filed in this court, but a complete transcript of the record, including a bill of exceptions, was filed within twelve months, as required by the statute. [Sec. 3761, R. S. 1929.] The prosecution was by indictment for the unlawful, wilful and felonious killing of one Grace Stewart by making a fatal assault upon her with a knife: that is to say, the indictment charged manslaughter.

The evidence for the State was that about 12:30 A. M. on December 2, 1929, a young negro man named Otis Collier was at the intersection of Jefferson Avenue and Locust Street in St. Louis, on the

way to his work as janitor of a building in that vicinity. Hearing a woman scream and call for help he stopped on the corner for a brief interval, listening, and the appellant came up to him. She had on a fur coat, a man's shirt and tie, and a cap twisted sideways on her head, and wore socks or short stockings. He had noticed her in the street and passed her a few minutes before. She asked "what was the matter, the lady was screaming." He answered that he thought a woman had got hurt. The appellant did not reply. Both walked up Locust Street about forty or fifty feet and found a white woman lying on her stomach in the snow on the sidewalk, who later proved to be Grace Stewart, the deceased.

Grace Stewart said to him in the presence of the appellant "that negro stabbed me." The appellant then said to him "I hate to see anybody suffer like that," and asked him for a nickel so she could telephone the police. He gave it to her and both went back to the corner of Olive Street and Jefferson Avenue where the witness waited. Presently two policemen came. The appellant told them a woman had been hurt and the witness, the appellant and the two officers all went to where Grace Stewart was still lying on the sidewalk. A patrol wagon came soon and took her to the hospital.

Floyd Washington, a bell boy at the Palmer Hotel testified he saw the appellant in the hotel four or five hours before the killing. She was wearing a fur coat and socks or short stockings, and appeared to be cleaning her finger nails with a knife which had a black handle and a bright new blade. The knife was introduced in evidence and identified by him. He made fun of the fur coat the appellant was wearing and she threatened to stick him with the knife. He saw the same knife again at police headquarters after midnight that night. This witness was vigorously assailed on cross-examination, and it was shown that at the coroner's inquest he had testified he saw part of the blade of the knife but didn't notice much about the handle, when the appellant threatened him with it.

Frank Williams, police sergeant, was one of the two officers who took the appellant into custody at Jefferson Avenue and Olive Street as has been narrated. She was wearing a fur coat and a gray cap. She told them a woman had been stabbed on Locust Street. They put the appellant in the police car and drove to the place where Grace Stewart had been left lying on the sidewalk. There they picked up the injured woman. She said she had been stabbed by "a colored person." The officers turned the appellant over to some uniformed officers and took Mrs. Stewart to the City Hospital. She was conscious but reticent and weak and wouldn't tell her name. She said she had been stabbed by a negro and if they would go back they would find the knife she had been stabbed with. That was all she would tell. She was bleeding from a wound in the chest. After

leaving the woman at the hospital the officers returned and found a knife in a vacant lot on Locust Street within five or six feet of where she had been lying. It was the knife previously identified by the witness Floyd Washington as having been in the appellant's possession earlier that night. At the police station the appellant denied stabbing Mrs. Stewart. The next night—twenty-four hours later—after the witnesses Collier and Washington had been to the police station, the appellant made a written admission of her guilt. The statement was introduced in evidence over the objections of the appellant, which will be noticed later.

Lieutenant Moran, in charge of the Eighth District police station in St. Louis, said when the appellant first was brought to the station she denied stabbing the deceased and stated she came upon her, already wounded, on her road home, and went to her assistance. She also denied ownership of the knife and said she had never seen it before. This officer talked to appellant several times and a day or two later, after the inquest, she made a voluntary confession and read, corrected and signed it.

The confession admitted she had been at the Palmer Hotel until about 12:30 the night of the killing; that the bell boy Floyd Washington had made some remark about her fur coat, as he testified, and she had playfully threatened to cut him with a knife she had in her pocket, it being a three bladed knife with a black bone handle, and the same one found by Sergeant Williams on Locust Street. The statement went on to narrate that she left the hotel about 12:45 A. M. for her home. As she was proceeding along Locust Street she met a strange woman who was staggering and acting crazy. The woman seized her by the coat collar and she thereupon stabbed her with the knife. The confession accounted for her movements thereafter until she met the witness Collier and substantially corroborated his testimony and that of Sergeant Williams. She said after the stabbing she ran through a "gangway" to an alley, thence through the alley to Jefferson Avenue, and then back north to the Locust Street intersection where she met Collier.

The coroner's physician testified an autopsy performed on the body of Grace Stewart disclosed her death was caused by a single penetrating stab wound which passed clear through the sternum, or breast bone, and entered the heart. The organs of the body generally were found to be normal and the stomach contents disclosed no trace of alcohol. The deceased was about forty years old, five feet six inches tall, weight about 150 pounds, and had on her person a ring, a string of beads and $5 in money.

The appellant was nineteen years old, about five feet eleven inches tall, and weighed 145 pounds. She testified at the trial and repeated substantially what she had stated in her confession. She didn't know

and had never seen Grace Stewart before the assault; but met her on the way home that night when the Stewart woman, without saying a word, suddenly grabbed her by the coat collar and held on, though appellant had done nothing and begged to be released. Appellant thereupon attempted to push Mrs. Stewart away, using the hand in which she held the knife, and cut her without knowing she had done it. On cross-examination the appellant admitted she got the knife out of her pocket and opened it after the Stewart woman seized her, and the blade was hard to open.

Continuing, appellant testified the deceased released her hold after being stabbed, and that she dropped the knife and ran "just as the statement said," but returned to see whether the woman had been hurt. On her return she met the witness Collier, borrowed five cents, and was going to telephone the police when she met the two officers who took her back to where Grace Stewart lay on the sidewalk. She admitted ownership of the knife and that she had it in her pocket that night when she met the bell boy Floyd Washington at the Palmer Hotel, but she declared it was a different knife she had in her hand on that occasion—a small one with a nail file. She said she did not tell the facts when first taken to the police station because she was frightened.

On cross-examination the appellant declared, as she had stated in her written confession, that the Stewart woman staggered and was acting crazy when she approached appellant and seized her. Appellant denied she, herself, was disguised as a man and attempting to rob the deceased because she was "broke" and her room rent due. She said she was wearing a fur coat but that she was bare headed and did not have on a cap or man's shirt and tie, as some of the State's witnesses had testified.

Appellant introduced four men who resided or worked in that part of St. Louis, as character witnesses. They said her reputation for peace and quiet was good. One policeman testified for the State that her reputation for truth, veracity, honesty and morality was bad. Other facts will be noticed as necessary.

I. The first two assignments of error in the motion for new trial are:

"That the verdict is against the evidence and the weight thereof;"

"That the verdict is against the law as applied to the evidence in the case, and against the law as set out in the instructions given by the court."

These assignments are too general and indefinite to comply with the requirements of the statute, Section 3735, Revised Statutes 1929; and therefore cannot be considered. [State v. Martin, 317 Mo. 313.

1210

318, 295 S. W. 543, 545; State v. Miller, 318 Mo. 581, 583, 300 S. W. 765, 767.]

■ II. The next assignment is that the court erred in admitting the testimony of the bell boy, Floyd Washington, concerning the incident in the Palmer Hotel about five hours before the assault, the testimony of this witness being that the appellant had in her hand a knife with a black handle and bright blade, and threatened to cut him with it. Appellant complains that this evidence was incompetent and irrelevant because the incident was too remote and had no tendency to prove any element of the crime, and yet was prejudicial to her. There is no merit in this contention. As is stated in 16 Corpus Juris, section 1045, page 546: "Evidence is relevant to show that accused owned, possessed, or had access to, tools, implements, or any article with which the particular crime was or might have been committed, and that he owned or had weapons in his possession prior to, or shortly after, the commission of the crime." [See, also, State v. Lett, 85 Mo. 52, 55; State v. Jeffries, 210 Mo. 302, 325, 109 S. W. 614, 621, 14 Ann. Cas. 524; State v. Nasello, 325 Mo. 442. 468, 30 S. W. (2d) 132, 141; State v. Mangercino, 325 Mo. 794, 802, 30 S. W. (2d) 763, 765.]

The witness Washington positively identified the knife found at the scene of the killing, with which the deceased evidently had been stabbed, as having been in the possession of appellant about five hours earlier that night. This was not too remote. In the Nasello and Mangercino cases just cited the period which had elapsed between the time when the defendant was shown to have acquired or had possession of the weapon and the commission of the crime was several months. Furthermore, in this case the appellant took the stand and admitted she owned and had the knife in the pocket of her fur coat when the incident occurred at the Palmer Hotel in which the witness Washington figured; that she remained at the hotel until fifteen minutes before the assault; and that she actually did stab the deceased with the knife. We can see no possible ground for complaint on appellant's part unless it be that the evidence showing she threatened to stab the witness Washington was prejudicial. But she admitted she did do that—playfully, with a different knife; and even if it had connected her with another crime it would have been competent, since it was interwoven with the other facts and the whole story tended to establish her guilt of the crime charged. [State v. Nasello, supra.]

■■ III. The fourth assignment in the motion for new trial is "that the court erred in admitting Detective Sergeant Williams to testify as to statement made by defendant at the Police Station

before the State proved that part of the indictment which alleged that, 'the said Grace Stewart was then and there in the peace of the State.'" In this connection it should be explained the indictment charged the appellant with force and arms did make a fatal assault "in and upon one Grace Stewart, in the peace of the State then and there being." It will be recalled also that the witness Sergeant Williams testified when the appellant was first brought to the police station she denied making an assault on the deceased, and then a night or two later, after the inquest, confessed, her statement being taken down in writing and signed by her. This statement was introduced by the State, and the appellant later, on the witness stand, substantially corroborated it. Her counsel contended at the trial that her story made out a case of self-defense.

Appellant's theory in the foregoing assignment is that since the State took the burden of alleging in the indictment Grace Stewart was within the peace when assaulted, it devolved on the State to prove that fact and to negative self-defense in making out a prima-facie case; and that until such affirmative showing had been made the State had no right to introduce the appellant's statements in evidence. We know of no such law. It is true the burden of proof was on the State throughout the trial to establish the appellant's guilt; and that one of the essential elements required to be shown was that the killing was malicious, thus negativing justifiable homicide. [State v. Malone, 327 Mo. 1217, 1227, 39 S. W. (2d) 786, 789-90.] But, as the Malone decision further holds, the unexplained killing of a human being by the intentional use of a deadly weapon upon a vital part of the body makes a prima-facie case of second degree murder, and is sufficient to cast the burden of evidence on the defendant. To that extent there is a presumption the deceased was within the peace, and the allegation in the indictment was surplusage. The admissions and voluntary extra-judicial confession of the appellant were competent evidence against her, and there is no rule fixing a particular place in the order of proof for the introduction of such evidence unless it be that the *corpus delicti* must be first proven, as was clearly done in this case. [State v. Bowman, 294 Mo. 245, 258, 243 S. W. 110, 114.] Furthermore, the appellant in her testimony at the trial repeated the essence of her prior confession. The contention cannot be sustained.

■ IV. During the trial the State introduced as a witness a sister of the deceased, Grace Stewart, who testified she had identified the body of the latter at the morgue. Counsel for the State then showed by the witness that Mrs. Stewart had lived with her in St. Louis for about fourteen months up to a week before her death. To this last testimony counsel for appellant violently objected on the

ground that it was immaterial and especially that when the assistant circuit attorney indorsed the name of the witness on the indictment out of time he stated he would use the witness for the sole purpose of proving the identity of the deceased. It was claimed the introduction of the further testimony mentioned was a breach of this agreement, and the point is again raised in the motion for new trial. We are unable to see that appellant's rights were prejudicially affected by this slight addition to the testimony of the witness, which appellant's counsel, himself, branded as immaterial. The motion for new trial says appellant was surprised, but we cannot hold a circumstance so trifling calls for reversal of the case, considering the nature of the evidence offered.

■ V. In his opening argument the assistant circuit attorney drew certain conclusions from the evidence and told the jury "we think something else prompted that killing and that it took place in a different manner" than appellant had detailed in her confession. Then he went on: "Now gentlemen, Grace Stewart had on her beads and was coming down that street there and she had on her string of beads and was accosted by this defendant with, 'where are you going; give me what you have got.'" Appellant's counsel objected at the time and the motion for new trial complains these remarks imputed to the appellant an attempt to rob the deceased, and that the stabbing was done when the deceased resisted. It is asserted these statements were not supported by the record, and were calculated to inflame the jury, and did do so.

In the closing argument counsel for the State said: "What had this defendant to be afraid of, gentlemen of the jury? Do you think when she had that knife on her, and from the size of the deceased, do you think she would be afraid of her; do you think she would be afraid of any one, especially a white woman? I will say that a colored woman with a knife like that on her person, wouldn't be afraid of anyone under any circumstances, and you gentlemen know it." These remarks, also, were objected to, and the motion for new trial complains they were improper and intentionally made to prejudice the appellant, especially the reference to colored women generally with knives.

In State v. Murray, 316 Mo. 31, 38, 292 S. W. 434, 438, this court said: "The prosecutor had a right to draw any inference from the evidence which he in good faith thought was justifiable. He was not to be rebuked for drawing unwarranted inferences, nor on account of an unsound argument." In State v. Blackmore (Mo. Sup.), 38 S. W. (2d) 32, 36, the prosecutor told the jury if the defendants had been proven guilty the verdict should be for conviction and then added, "I believe they are." This court held that since it appeared

the conclusion thus expressed was drawn from the record, the remark was not improper. [See, also, State v. Miles, 199 Mo. 530, 553, 98 S. W. 25, 31.] We take the same view of this case. It is apparent the assistant circuit attorney was making deductions from the evidence introduced. There was a fact basis in the record for all of it, and it furnishes no adequate ground for. reversal .of the case.

This disposes of all the points raised in the.motion for a new trial. We find no error in the record proper. The judgment is accordingly affirmed. All concur.