THE STATE v. W. E. HARLOW, Appellant.—37 S. W. (2d) 419.

Division Two, March 25, 1931.

*Howell H. Heck* for appellant.

*Stratton Shartel,* Attorney-General, and *Walter E. Sloat,* Assistant Attorney-General, for respondent.

HENWOOD, J.—W. E. Harlow and R. E. Ferrell were jointly charged, in the Circuit Court of Bates County, with unlawfully, willfully. and feloniously transporting "hootch, moonshine, corn whiskey." They were tried jointly and found guilty, and the jury assessed Harlow's punishment at imprisonment in the penitentiary for five years, and assessed Ferrell's punishment at imprisonment in the county jail for three months and a fine of $500. Judgment and sentence followed, in accordance with the verdict, and Harlow appealed. Ferrell did not appeal.

The evidence adduced by the State is, in substance, as follows:

In the month of January, 1929, and for about two years prior thereto, Mike Ioup operated a gasoline filling station and a lunch room on State Highway No. 71, about one mile south of the town of Rich

Hill, in Bates County. In the early part of January, 1929, Mike informed Sheriff Hartley of Bates County that two men, a tall man and a short man, had been transporting and "peddling" whisky in that vicinity; that these men had used different cars in transporting whisky, sometimes a Chevrolet car, and the last two or three times a new Ford car; that, on some of these trips, the tall man was accompanied by a woman and not by the short man; and that, on one occasion, the tall man and short man came into his lunch room and ordered some sandwiches, and, while he was preparing the sandwiches, stole two watches from his "punch board." Mike also told the sheriff that he wanted to "get even" with them because they stole his watches, and asked the sheriff to "lay" for them and "get them" with a load of whisky. The sheriff suggested that Mike order some whisky from these men and notify him as to when it would be delivered. Mike ordered five gallons of whisky, "of the corn brand," and notified the sheriff, "the night before," that these men would "come through" in a new Ford car, with a load of whisky, about eight o'clock in the evening of the next day. Between seven and eight o'clock in the evening of the next day, January 18, 1929, the sheriff and two deputies, Bradley and Oberwether, went to Mike's premises and, after stationing themselves at different points outside of the lunch room, awaited the arrival of the new Ford car and the men described by Mike. About nine or 9:30 o'clock that evening, a new Ford coupe approached the lunch room from the south on State Highway No. 71, and stopped near the lunch room. Immediately a tall man got out of the Ford coupe and entered the lunch room, leaving a short man and a woman in the car. The tall man was Harlow, the short man was Ferrell, and the woman was Harlow's wife. Oberwether testified that he followed Harlow into the lunch room and arrested him before the car was searched. The sheriff and Bradley testified that Harlow, Ferrell and Mrs. Harlow were arrested after the car was searched. As the sheriff and Oberwether approached the car, Bradley was "assisting" Ferrell and Mrs. Harlow out of the car, and all three of the officers observed that Mrs. Harlow was intoxicated, "very drunk." After Ferrell and Mrs. Harlow got out of the car, Bradley took a bunch of keys out of the "dash board," and used one of the keys to unlock a compartment in the rear part of the car. In this compartment Bradley and Oberwether found thirteen gallons of liquor, in two five-gallon jugs and three one-gallon jugs. The jugs were enclosed in gunny sacks. They removed the liquor from the car and turned it over to the sheriff. One of the jugs was produced at the trial and admitted in evidence, and the liquor contained therein was "inspected and smelled by the jury." The sheriff and Bradley testified that the liquor in this jug was "moonshine," and Oberwether testified that it was "corn whisky." All three said

they smelled it, but did not taste it. At the time the Ford coupe was searched, Harlow told the officers that it belonged to him, but later told them that it belonged to ''a lady friend of his in Kansas City.'' The sheriff testified that, about a week or ten days after the seizure of the liquor, Harlow ''said he would make it right with me if I would let him change this liquor; he said he would take the liquor out and put vinegar in;'' and that he told Harlow ''nothing doing.''

Harlow testified: At the time in question, he was thirty-two years of age, and lived in Kansas City, Missouri, where he was employed as a cab driver. He was previously employed for six years as a police officer in Kansas City. The new Ford coupe belonged to Mrs. Doris Henderson, a restaurant keeper in Kansas City. He and his wife and Ferrell were taking a ride in this car in the afternoon of January 18, 1929, and he decided to drive ''to Mike's to buy some whisky.'' They stopped there about four o'clock that afternoon, and bought some sandwiches and ''two half pints'' Then, he drove on south to Nevada, and, when he stopped at ''Mike's'' on the way back to Kansas City that night, for the purpose of buying some more whisky from Mike, the officers arrested him and Ferrell and his wife, and searched the car. He ''knew nothing about'' the whisky found in the car. Prior to this occasion, he had bought whisky from Mike several times, but he had never stolen any watches from Mike. His wife usually accompanied him on his trips to ''Mike's place.'' Ferrell had never gone there with him before.

Ferrell's testimony was substantially the same as Harlow's in every particular. He said Harlow was his neighbor; that he ''just went for a ride,'' upon Harlow's invitation, on the occasion in question; and that he had never ''been any place with Mr. Harlow in an automobile, outside of Kansas City, before this day.'' He also said he did not know that there was any whisky in the car.

Two witnesses testified that Harlow's general reputation ''for truth and veracity'' was good; and two other witnesses testified to the same effect on behalf of Ferrell.

I. When the case was called for trial, the appellant and his co-defendant filed a joint motion to suppress the evidence relating to the search of the car and the seizure of the liquor found therein, on the ground that the search and seizure, without a search warrant, was illegal and in violation of their constitutional rights, and the appellant now complains of the action of the trial court in overruling the motion.

Sheriff Hartley and his deputies, Bradley and Oberwether, were called as witnesses in support of the motion, and the testimony given by them at that time is the same, in substance and effect, as the testi-

mony given by them at the trial of the case, when they were called to testify as witnesses for the State. The statement of the State's evidence hereinabove made, concerning the search and seizure, is taken from their testimony. According to their testimony, they had been informed by Mike Ioup that a tall man, sometimes accompanied by a woman and sometimes by a short man, had been transporting and "peddling" whisky on State Highway No. 71, in Bates County, and that these persons, or some of them, would "come through" in a new Ford car, with a load of whisky, during the evening of January 18, 1929; and, with this information, they went to Mike's lunch room early that evening, and awaited the arrival of the new Ford car and the persons described by Mike; and, about nine or 9:30 o'clock that evening, a new Ford coupe, driven by a tall man, who was accompanied by a short man and a woman, stopped at the lunch room; and the tall man was Harlow, the short man was Ferrell, and the woman was Harlow's wife; and Mrs. Harlow was intoxicated, "very drunk." Under such circumstances, the officers had reasonable grounds to believe that Harlow, Ferrell and Mrs. Harlow were committing a felony; and, so believing. the officers were authorized to arrest Harlow, Ferrell, and Mrs. Harlow without a warrant, and, as incidents to the arrest, to search the car without a search warrant, and to seize the liquor found therein, whether it was "moonshine" or "corn whisky." At the hearing on the motion to suppress the evidence relating to the search and seizure, Deputy Sheriff Oberwether testified, and the trial court found, that he arrested Harlow before the car was searched. And, in view of the testimony of all three of the officers, as to what was said and done by them before the car was searched, the trial court would have been warranted in finding that Ferrell and Mrs. Harlow, as well as Harlow, were, in fact, arrested before the car was searched, although Sheriff Hartley and Deputy Sheriff Bradley testified that Harlow, Ferrell and Mrs. Harlow were arrested after the car was searched. It follows that the motion to suppress the evidence relating to the search and seizure was properly overruled. [See our rulings in State v. Bailey, 320 Mo. 271, 8 S. W. (2d) 57; State v. Williams, 14 S. W. (2d) 434; State v. Howard, 23 S. W. (2d) 11.]

II. Nor is there any merit in the appellant's challenge of the sufficiency of the evidence. It appears, not only from the testimony of the State's witnesses, but from the testimony of the appellant and his codefendant, that the appellant was driving, and that he controlled the movements of, the car in which thirteen gallons of liquor were found. And it further appears, from the testimony of the State's witnesses, the sheriff and his two deputies, that the liquor was "moonshine" or "corn whisky." The appellant's testimony that he "knew nothing about" the whisky

found in the car, or that he did not knowingly transport the whisky, merely presented an issue for the jury to determine, from all of the evidence in the case, and the evidence is amply sufficient to support their findings on this and all other issues presented for their determination. Numerous convictions, based upon similar proof, have been upheld by this court. [See State v. Wheeler, 318 Mo. 1173, 2 S. W. (2d) 777, and cases cited therein; also, State v. Williams, supra, and State v. Howard, supra.] The trial court properly overruled the demurrer offered by the appellant at the conclusion of all of the evidence.

III. The appellant complains, in his brief, of the State's main instruction, but he made no such complaint in his motion for a new trial. Therefore, the complaint made in his brief, concerning this instruction, will be disregarded. [Sec. 4079, Laws 1925, p. 198; State v. Standifer, 316 Mo. 49, 289 S. W. 856.]

IV. The appellant further complains of the failure of the trial court "to instruct the jury on good character." Such an instruction was unnecessary, and would have been improper, because there was no evidence tending to show that appellant's character was good, within the meaning of Section 4025, Revised Statutes 1919, which provides for an instruction on the subject of good character "whenever necessary." True, two witnesses testified that appellant's general reputation "for truth and veracity" was good, but such evidence related only to his reputation as a witness and not to his character as a defendant. [See State v. Hayes (Mo. Sup.), 295 S. W. 791; State v. Marshall, 317 Mo. 413, 297 S. W. 63.] Moreover, the evidence of the appellant's good reputation for truth and veracity should not have been admitted, because his reputation for truthfulness was not attacked by the State. [See State v. Marshall, supra.]

V. Finally, the appellant points to the punishment assessed against him as proof of passion and prejudice on the part of the jury. We find nothing in the record to indicate that the jury were influenced by any improper motive, and the fact that they assessed the appellant's punishment at the maximum amount prescribed by the statute, standing alone, is not enough to justify such a belief. [See State v. Bailey, supra, and State v. Wheeler, supra.]

The information and the verdict are sufficient in form and in substance, and no prejudicial error appears in the trial proceedings. The judgment is affirmed. All concur.