**STATE of Missouri,
Plaintiff-Respondent,**

v.

**Gregory Allen MANNING,
Defendant-Appellant.**

No. 48232.

Missouri Court of Appeals,
Eastern District,
Division One.

Nov. 7, 1984.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 18, 1984.

Application to Transfer Denied
Jan. 15, 1985.

Charles M. Shaw, Clayton, for defendant-appellant.

John Ashcroft, Atty. Gen., Jefferson City, George A. Peach, Circuit Atty., St. Louis, for plaintiff-respondent.

PUDLOWSKI, Presiding Judge.

Defendant was convicted of the second degree murder of Mark Walker which arose out of a shooting incident in which defendant also injured his wife, Brenda. On appeal, this court reversed and remanded the murder conviction for a new trial because defendant's wife testified over his objection in violation of Section 546.260 RSMo 1978. *State v. Manning*, 657 S.W.2d 301 (Mo.App.1983). Before retrial, defendant and his wife were divorced and she testified in the second trial. Defendant was again convicted of second degree murder and sentenced to a term of twenty-five

years imprisonment.[1] He appeals raising five contentions of error. We find them to be without merit and affirm the conviction.

The evidence as presented in the first trial by the state was nearly identical to the evidence presented in the second trial and thus Judge Crist's recitation of the facts in the first appeal serves us well:

Defendant and his wife were married in 1975, had one child and separated in March 1981. At the time of the shooting, in May 1981, defendant's wife and child were living in a flat owned by defendant and wife. Shortly before that time, Julia Peckhorn and her young child had moved into the flat with wife and child.

After enjoying a movie on May 16, 1981, with their boyfriends, wife, Julia and the two boyfriends returned to the flat. Wife and her boyfriend (the victim) eventually retired to the master bedroom. Julia and her boyfriend visited in the living room. At about 2:00 a.m. on May 17, 1981, defendant appeared and asked to see wife. Julia went to the bedroom door and gave wife defendant's message.

Wife met with defendant in the kitchen. Defendant was interested in a reconciliation. Wife was not. In fact, the two were scheduled to meet with an attorney later that day to discuss a divorce.

Defendant pulled a gun from his waistband. Wife fled from the kitchen in an attempt to warn the others in the apartment about the gun. Defendant shot her in the knee as she ran. He then stood at the entrance of the master bedroom and fired several shots into the room killing wife's boyfriend. The police arrived shortly thereafter. Defendant told them he fired the gun "because she's my wife."

657 S.W.2d 301–02.

In the second trial, defendant testified in his own defense. He testified he had not carried a weapon onto the premises but rather picked up a weapon laying on the kitchen table which had been placed there by his wife and shot the victim, Mark Walker, in self defense.

Brenda testified in the second trial over defendant's objection to the events surrounding the shooting as well as the reasons for her separation from defendant. Defendant's first two points on appeal allege error in allowing her to testify at the second trial. He contends allowing her to testify placed him in double jeopardy; violated the "law of the case" as well as the doctrine of collateral estoppel. We find no merit to these contentions.

The judgment of conviction in the first trial was reversed because Brenda was allowed "to testify against defendant as the two were still married at the time of trial." 657 S.W.2d at 302. Before retrial, Brenda and defendant were divorced. Section 546.260 provides that: "[N]o person on trial or examination, nor wife or husband of such person, shall be required to testify, but any such person may, at the option of the defendant, testify in his behalf ...."

The admissibility of a spouse's testimony is determined according to the marital status at the time the testimony is offered, not at the time the offense was committed. *State v. Dunbar*, 360 Mo. 788, 230 S.W.2d 845, 848 (1950). The proscription in Section 546.260 "applies to the testimony of an individual if he or she is married to the defendant at the time of trial." *State v. Hankins*, 642 S.W.2d 606, 611 (Mo. 1982). As the Supreme Court stated in *State v. Euell*, 583 S.W.2d 173, 177 (Mo. banc 1979):

[A] different question is presented where, as here, there has been a divorce between the time of the occurrence for which the defendant is on trial and the time the spouse is called upon to testify. In such instance, there is no longer any marital relationship or family peace which might be protected by excluding the former spouse from appearing as a witness for the prosecution. Most of the

---

1. Defendant was also separately convicted of the second degree assault on his wife which conviction was affirmed by this court in *State v. Manning*, 664 S.W.2d 605 (Mo.App.1984).

statutes which have been enacted regarding the competency of a spouse to testify appear to refer to the status of the parties, vis-a-vis each other—husband, wife—as of the time of the trial. Hence, where the marriage is dissolved at the time of the trial, and they no longer occupy that status, no reason appears why one should not be allowed to testify against the other. There is no longer any marriage that could be affected.

 Section 546.260 did not prohibit Brenda's testimony at the second trial.[2] Neither did the prohibition against double jeopardy bar her testimony. The Double Jeopardy Clause forbids a second trial for the purpose of affording the prosecution another opportunity to supply evidence which it failed to enter in the first proceeding. If a conviction is reversed solely due to evidentiary insufficiency the double jeopardy clause requires a judgment of acquittal. If a conviction is reversed solely due to trial error, then retrial is constitutionally permissible. *State v. Wood,* 596 S.W.2d 394, 398 (Mo. banc 1980). Defendant's first conviction was reversed solely due to trial court error in the first proceeding. It was not error to retry the defendant. Defendant contends the issue of wife's right to testify was resolved against the state and the doctrine of collateral estoppel prevents that issue from being relitigated. The doctrine of collateral estoppel only applies in a criminal case when the issue determined in the prior case is the same as the issue in the pending case. *State v. Thomas,* 625 S.W.2d 115, 125 (Mo.1981). The issue in the first trial was whether a wife could testify against her husband. The issue in the second trial was whether a divorced wife could testify against her husband.

Collateral estoppel has no application because the issues were not the same.

 Defendant also cites several civil cases for the proposition that the decision of an appellate court on all points presented in an appeal becomes the "law of the case" on those issues in subsequent proceedings. *Barkley v. Mitchell,* 411 S.W.2d 817, 826 (Mo.App.1967). We have no quarrel with this proposition. However, the "law of the case" will be only applied where the facts are substantially the same on the second appeal. *Pritt v. Terminal R.R. Assn.,* 251 S.W.2d 622, 623 (Mo.1952). It consequently has no application here.

In defendant's next point, he alleges the trial court erred in failing to submit MAI-CR2d 2.50 on defendant's character[3] to the jury. Defendant called four witnesses who testified that defendant had a good reputation within the community for "truthfulness, for honesty and for general good conduct."

 No instruction on character was requested. The Notes on Use provide that this instruction must be given whether requested or not, whenever necessary. See § 546.070 RSMo 1978. "Whenever necessary" means such an instruction is necessary only where there is substantial evidence of a defendant's good reputation with respect to those traits of character which would ordinarily be involved in the commission of an offense such as that with which defendant is charged. *State v. Quinn,* 344 Mo. 1072, 130 S.W.2d 511, 515 (1939). *State v. Jenkins,* 622 S.W.2d 281, 284 (Mo.App.1981).

 Defendant asserts that in a trial for murder any facet of his character is involved. However, the Supreme Court in *State v. Hayes,* 295 S.W. 791, 793 (Mo.1927)

**2.** Defendant did not invoke the confidential communication portion of the privilege which is not dependent on the marital status of the parties at the time of trial. *State v. Euell,* 583 S.W.2d 173 (Mo. banc 1979).

**3.** MAI–CR2d 2.50 in part provides:
Evidence has been introduced concerning the reputation of defendant as to those traits of character which ordinarily would be involved in

the commission of an offense such as that charged in this case. This evidence was received because a jury may reason that a person of good character as to such traits would not be likely to commit the offense charged against the defendant. Therefore, you should consider such evidence along with all of the other evidence in the case in determining the guilt or innocence of the defendant.

held that the only capacity in which a defendant's reputation may be shown in defense of a charge of murder or assault and which will require an instruction on character is his reputation within the community as a peaceable and law-abiding citizen. This principle was reaffirmed in *State v. Brown*, 62 S.W.2d 426, 427 (Mo.1933).

■ Defendant's reputation for truthfulness does not put his character in issue, only his credibility as a witness and does not require the giving of the character instruction. *State v. Harlow*, 327 Mo. 231, 37 S.W.2d 419, 421 (1931); *State v. Underwood*, 530 S.W.2d 261, 263 (Mo.App.1975). Evidence of defendant's reputation for honesty does not require an instruction on character in a prosecution for assault or murder, *State v. Hayes*, 295 S.W. 791, 793 (Mo.1927); while it does in a prosecution for larceny, or robbery, *State v. Wells*, 586 S.W.2d 354, 359 (Mo.App.1979).

That leaves only the testimony that defendant had a reputation for "good conduct" as evidence to support giving the character instruction.[4] Our research has disclosed that no Missouri murder or assault conviction has ever been reversed for failure to give a character instruction unless there was evidence of defendant's reputation for the specific traits of character as a peaceable, quiet or law-abiding citizen. *State v. Antwine*, 506 S.W.2d 397 (Mo. 1974); *State v. Jackson*, 373 S.W.2d 4 (Mo. 1963); *State v. Brown*, 62 S.W.2d 426 (Mo. 1933); *State v. Lindsey*, 7 S.W.2d 253 (Mo. 1928); *State v. Baird*, 288 Mo. 62, 231 S.W. 625 (1921); *State v. Swain*, 68 Mo. 605 (1878).

■ In *State v. Martin*, 651 S.W.2d 645, 656 (Mo.App.1983), the court held that in a capital murder case, evidence that defendant had a reputation within the community as an "honorable man" did not require the giving of MAI–CR2d 2.50 because the character trait of being honorable was not a "trait of character which ordinarily would be involved in the commission of capital murder." The court cited the definition of honorable as "deserving of honor." In addition, we note "honorable" is a synonym for "decent, admirable, and upright." Webster's New Collegiate Dictionary defines "good" as of a favorable character or tendency. It also includes synonyms such as *honorable*, "adequate," "satisfactory," "right," or "commendable." There is an absence in the record of any further testimony elaborating or defining what any of the witnesses meant by "general good conduct." We conclude that this paucity of testimony does not constitute substantial proof of a trait of character that would ordinarily require a submission of MAI–CR2d 2.50 when the defendant is charged with the commission of murder. We find that the court did not err in failing to give MAI–CR2d 2.50.

■ Defendant next complains about hearsay testimony of a police officer. The officer testified that when he arrived at the scene, he spoke with Larry Latham outside the apartment and was told there had been a shooting. The officer further stated he asked Latham who the individuals were and who had the guns. He then testified he went to the doorway and called the name of "Gregory Manning" up the stairwell. At that point, the defendant appeared. The state citing *State v. Harris*, 620 S.W.2d 349, 355 (Mo. banc 1981) asserts there was no hearsay. However, we need not resolve this issue. Even if the officer's statements constituted hearsay, there was no prejudice. Defendant testified in his own defense. He admitted shooting the victim, possessing a weapon, being called by a police officer, going downstairs and surrendering. Admission of objectionable hearsay evidence will not constitute reversible error if defendant testifies to the same facts. *State v. Williams*, 522 S.W.2d 641 (Mo.App.1975); *State v. Mills*, 521 S.W.2d 495 (Mo.App.1975).

---

4. In *State v. Turner*, 246 Mo. 598, 152 S.W. 313, 315 (1912), the Supreme Court found it unnecessary to determine whether a failure to instruct on character would be prejudicial error in a murder prosecution where there was evidence of defendant's "good conduct."

Finally, defendant complains that the trial court erred in sustaining objections of the prosecutor during his cross-examination of Brenda. We have examined the record and find that one of the objections was overruled and one was sustained on the basis of the form of the question. In the remaining instances, the information was elicited from the witness at other points during cross-examination. We find no merit to defendant's point. *State v. Hacker*, 291 S.W.2d 155, 160–61 (Mo.1956); *State v. Foley*, 629 S.W.2d 401, 402–03 (Mo.App.1981).

Affirmed.

GAERTNER and KAROHL, JJ., concur.